# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES BAENIG,** | : | **CIVIL ACTION NO. 1:07-CV-2148** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **GEORGE W. PATRICK and the** | : | |
| **PENNSYLVANIA ATTORNEY** | : | |
| **GENERAL** | : | |
| | : | |
| **Respondents** | : | |

## MEMORANDUM

Presently before the court is an amended petition for writ of habeas corpus (Doc. 30), filed by *pro se* petitioner Charles Baenig ("petitioner") pursuant to 28 U.S.C. § 2254. Petitioner contends (1) that the sentencing court abused its discretion by imposing a minimum of fifteen and a maximum of 225 years' imprisonment for his offense of conviction, (2) that the sentence imposed is illegal because it is uncertain or of indeterminate length, (3) that his guilty plea is unconstitutional because it was not made knowingly and intelligently, and that his counsel was ineffective for failing to challenge the defects of the guilty plea, and (4) that he is "actually innocent" of two of the counts to which he pled guilty. On December 2, 2008, the magistrate judge filed a report (Doc. 15) recommending that the petition be denied. After an independent review of the record, the court concludes that petitioner's claims are without merit and will deny his petition.

## I.    Factual Background & Procedural History

On December 8, 2003, petitioner pled guilty to forty-six counts of harassment by communication and forty-five counts of stalking by communication. (See Doc. 8, Ex.

A.) Petitioner was sentenced on April 8, 2004 to a term of four to sixty months'

incarceration on each of the forty-five counts of stalking by communication; these

terms were ordered to run consecutively.  (See Doc. 8, Ex. B at 85-89.)  Additionally,

petitioner was sentenced to one year probation for each count of harassment by

communication, also to run consecutively.  (See id. at 89.)  The total term of

incarceration amounted to a minimum of fifteen years and a maximum of 225 years'

imprisonment with forty-six years' probation.  (See id. at 85-89.)  A fine of $100 per

count, totaling $9,100, was also assessed.  (See id.)  The sentencing judge also imposed

a number of conditions on petitioner's eligibility for parole, to wit:  (1) completion of

9,100 hours of community service; (2) constraints on the use of any communication

devices; (3) prohibitions on alcohol or illegal drug use; and (4) the requirement that

prior to his release, three psychiatric professionals conclude that petitioner is not a

danger to society.  (See id. at 89-93.)

Petitioner appealed his sentence to the Pennsylvania Superior Court, alleging

that the sentencing court abused its discretion by imposing a sentence that was

manifestly excessive and by ordering conditions on the sentence that were illegal.

(See Doc. 8, Ex. E at 10.)  On April 20, 2005, the superior court affirmed the sentence.

(Id. at 21.)  Petitioner filed an allowance of appeal to the Pennsylvania Supreme Court

on May 2, 2005, (Doc. 8, Ex. F), which was denied on October 27, 2005, (Doc. 8, Ex. G).

On December 20, 2005, petitioner filed a petition for relief under the

Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9545(b)(1).

(Doc. 8, Ex. I.)  He therein alleged that prior to accepting his guilty plea, he was not

informed of the potential conditions of parole and of the statutory maximum sentence. Thus, petitioner contended that his due process was violated when he pled guilty. Petitioner also claimed that his counsel was ineffective for failing to challenge the purported defects of the plea agreement. (See id.) The PCRA court denied petitioner's motion, (Doc. 8, Ex. L), and the Pennsylvania Superior Court affirmed on appeal, (Doc. 8, Ex. N). The Pennsylvania Supreme Court denied an allowance of appeal on July 18, 2007. (Doc. 8, Ex. P.)

Petitioner filed the instant petition for writ of habeas corpus in this court on November 27, 2007. (Doc. 1.) The Dauphin County District Attorney ("respondent") filed an opposition to the petition on December 27, 2007. (Doc. 8.) On December 2, 2008, the magistrate judge issued a report recommending that this court deny petitioner's request for a writ of habeas corpus.[1] (Doc. 15.) After the magistrate judge recommended a disposition, however, petitioner filed a motion to amend the petition for writ of habeas corpus (Doc. 26). The court granted this request on June 5, 2009 (Doc. 29). In the amended petition, petitioner raises a fourth claim not addressed in the original petition or in the magistrate judge's report and recommendation—namely, that he is actually innocent of two of the counts for which

---

[1]As a prerequisite to adjudication on the merits, petitioner must demonstrate that he exhausted each of his claims through the Pennsylvania state courts. See 28 U.S.C. § 2254(b)(1). The magistrate judge's report and recommendation contains a lengthy discussion of petitioner's exhaustion efforts with respect to the first three grounds of requested relief. (See Doc. 15 at 8.) In short, the magistrate judge concluded that the claims contained in counts I, II, and III of petitioner's writ of habeas corpus were properly exhausted. (See id.) This court adopts the magistrate judge's recommendation regarding exhaustion and thus will not repeat the analysis.

he was convicted.  (Doc. 30 at 10.)  Respondent filed a brief in opposition to the amended petition (Doc. 32) on July 9, 2009, to which petitioner filed a reply brief (Doc. 33) on July 22, 2009.  The petition is now ripe for disposition.

**II.    Discussion**

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.  Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  § 2254(a); Estelle, 502 U.S. at 67-68; see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") prescribes the appropriate standard for a federal court to review the claims of a state prisoner challenging his conviction.  See § 2254(d).  An application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall only be granted if :

> (1) [the state court decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) [the state court decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

Id.

The Third Circuit has set forth a two-step process for reviewing § 2254 petitions. First, the court must "identify the applicable Supreme Court precedent and determine whether it resolves [petitioner's] claims." Outten v. Kearney, 464 F.3d 401, 413 (3d Cir. 2006) (citing Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004)). Upon a finding that "the state court decision is not 'contrary to' the applicable Supreme Court precedent," the reviewing court must "advance to the second step in the analysis," which is to determine if "the state court decision was based on an 'unreasonable application' of Supreme Court precedent." Id. at 413-14 (quoting Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000)). "[The reviewing court] should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id. at 414 (quoting Hackett, 381 F.3d at 287).

Petitioner raises four separate grounds for relief in his application for a writ of habeas corpus. He first contends that the sentencing court abused its discretion by imposing a sentence that was manifestly excessive. (See Doc. 30 at 6.) Petitioner argues that his sentence will likely result in a term of life imprisonment, and he asserts that such a result is contrary to the purpose underlying the Pennsylvania state sentencing guidelines because the crime to which he pled guilty did not invite a life sentence. (See id.) In his second ground for relief, petitioner contends that his sentence is illegal because it imposed conditions that potentially exceed the statutory maximum permitted for his sentence. (See id. at 7.) Specifically, petitioner asserts

that (1) his completion of 9,100 hours of community service is unreasonable, rendering

his sentence indefinite; (2) the restrictions on his intake of alcohol and drugs, and the

restrictions upon his use of communication devices are unreasonable because they

will be imposed after he leaves prison; and (3) the requirement that three psychiatric

professionals consent to petitioner's release renders his sentence indefinite because

no unanimous opinion may ever materialize. (See id. at 7-8.) Petitioner's third ground

for relief reasserts a claim raised in his PCRA petition, to wit, that his guilty plea was

not knowing and intelligent and that his counsel was ineffective for failing to challenge

the purported defects of his guilty plea. (See id. at 9.) Finally, petitioner asserts that

he is actually innocent of two of the counts to which he pled guilty. (See id. at 10.)

The court will address these claims *seriatim*.

    **A.**    <u>**First & Second Grounds for Relief**</u>

    The first and second grounds raised in the amended petition constitute

challenges to the length and conditions of petitioner's sentence. Petitioner first claims

that the sentencing court abused its discretion by imposing a sentence that is

manifestly excessive. (See id. at 6.) He argues that his sentence essentially amounts to

a term of life imprisonment, considering that the maximum term of incarceration is

225 years. (See id.) In his second ground for relief, petitioner alleges that his sentence

is illegal because it imposes "conditions of indeterminate length potentially exceeding

the statutory maximum, or [that are] of such uncertainty that performance may be

rendered impossible for the petitioner to ever be able to accomplish them."

(See id. at 7.) The specific conditions about which petitioner complains include the

sentencing court's imposition of 9,100 hours of community service, prohibitions on

petitioner's use of alcohol, drugs, and communication devices, and the requirement

that prior to his release, three psychological professionals concurrently agree that

petitioner is not a danger to society. (<u>See</u> <u>id.</u>) Neither of these grounds for relief are

cognizable in a § 2254 petition and, even if they were, both claims lack merit.

### 1.    <u>The Length of Petitioner's Sentence</u>

Petitioner's contention that the sentencing court "abused its discretion" by

imposing a total term of imprisonment of 225 years is a claim that does not implicate

the laws or the Constitution of the United States. Rather, petitioner simply alleges

that the sentencing court was unreasonable in its application of state law. Allegations

that a state tribunal abused its discretion under state law, however, do not subsume a

federal constitutional question. In fact, habeas challenges to a state court's sentencing

discretion are unreviewable by a federal court provided that the sentence lies within

the statutory guidelines, it is not based upon arbitrary considerations, and the

defendant's constitutional rights were not violated. <u>See</u> <u>Estelle</u>, 502 U.S. at 67-68

(explaining that federal habeas courts are not permitted to review questions of state

law); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) (same); <u>Wainwright v. Sykes</u>, 433 U.S.

72, 81 (1977) (indicating that questions of state substantive law are not cognizable on

federal habeas review); <u>Townsend v. Burke</u>, 334 U.S. 736, 741 (1948) (stating that when

a state "sentence [is] within the limits set by the statute, its severity would not be

grounds for [habeas] relief"); <u>see also</u> <u>Jones v. Superintendent of Rahway State</u>

<u>Prison</u>, 725 F.2d 40, 42-43 (3d Cir. 1984) (ruling that a challenge to a state court's

sentencing discretion was not cognizable in federal habeas petition); <u>Smith v. Kerestes</u>, Civ. A. No. 08-0061, 2009 WL 1676136, at *16 (E.D. Pa. June 15, 2009) (rejecting petitioner's claim that his state sentence was excessive because "absent a Constitutional violation, a federal court has no power to review a sentence in a habeas corpus proceeding unless it exceeds statutory limits").  Petitioner objected to the length of his sentence on direct appeal, and the superior court held that petitioner's sentence fell squarely within the applicable state sentencing guidelines and that computation of the sentence was based upon facts specific to the offenses for which he was convicted.[2]  Accordingly, this sentence was applied within the broad limits established by the Constitution, and petitioner's objections to the sentence length fail to raise a cognizable claim for federal habeas relief.

In addition, the state court decision is not an unreasonable determination of facts in light of the evidence presented.  <u>See</u> § 2254(d); <u>Outten</u>, 464 F.3d at 413-14.  As the superior court observed, the sentencing court reviewed petitioner's criminal history and his potential for recidivism, and then imposed a sentence on each count that was within the statutory guidelines.  (<u>See</u> Doc. 8, Ex. E at 8, 17.)  Because the sentence for each count was within the statutory guidelines, the superior court held

---

[2] Although the superior court did not support its decision with citation to Supreme Court case law, "[a] state court decision is not contrary to . . . clearly established Federal law simply because the [state] court did not cite [applicable Supreme Court precedent]."  <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003).

that it was not manifestly excessive. (See id.) In this fashion, the sentence was well-considered and adhered to the relevant guidelines; it was not arbitrarily assigned.[3]

## 2. The Conditions of Parole

Petitioner's second ground for relief, which contests the conditions of his parole, does not state a claim that is cognizable under § 2254. Specifically, petitioner argues that the parole conditions imposed by the sentencing court are unreasonably restrictive. This objection challenges the state court's discretionary application of state law and does not implicate the legality of the sentence. When the superior court considered this issue on direct review, it queried whether the conditions fell within the applicable guidelines range and whether they were contrary to the underlying purposes of the state sentencing process. (See Doc. 8, Ex. E at 19.) Both inquiries were answered in the affirmative. (See id.) The test applied by the superior court is consistent with Supreme Court precedent and, as a result, does not allege a claim arising under the Constitution or laws of the United States. See, e.g., Estelle, 502 U.S. at 67-68; Lewis, 497 U.S. at 780; Jones, 725 F.2d at 42-43; see also supra Part II.A.1 (explaining that objections to a state court's sentencing discretion are not cognizable on federal habeas review and citing cases). Accordingly, federal habeas review is precluded under § 2254.

---

[3] At first blush, one might consider the sentence rather harsh in light of the non-violent nature of the offenses. However, it is important to note that the trial court was faced with a defendant who had *nineteen* prior convictions involving some form of harassment by communication. (See Doc. 8, Ex. C at 9-12.) Hence, the sentence must be viewed in the context of this extreme incorrigibility.

Moreover, the parole conditions do not constitute an unreasonable determination of facts in light of Supreme Court precedent. The superior court found that the conditions were within the state sentencing guidelines and were not arbitrarily imposed. <u>See</u> <u>Townsend</u>, 334 U.S. at 74 (holding that federal court review of state sentences is limited to inquiring whether the sentence was within the state guidelines and whether it was arbitrary). Although petitioner claims the conditions are "indefinite," they will expire upon completion of petitioner's parole. (<u>See</u> Doc. 8, Ex. E at 19.) Furthermore, each condition was tailored to petitioner's characteristics and criminal history. The imposition of 9,100 hours of community service was based on the assignment of 100 hours for each of the ninety-one counts of conviction. (<u>See</u>

Doc. 8, Ex. B at 89-90.) A parole condition of 100 hours per count is not an uncommon condition of release and is therefore not arbitrarily assigned.[4] (See Doc. 8, Ex. E at 18.)

In addition, petitioner also objects to limitations on his post-incarceration use of alcohol, drugs, and communication devices. The sentencing court imposed these restrictions in light of petitioner's history of substance abuse, and his improper use of communication devices to perpetrate his crimes. Thus, these conditions were also not arbitrarily assigned by the sentencing court. (See id. at 19.) Finally, petitioner objects to the requirement that he acquire approval from three psychiatric professionals before obtaining his release. This parole condition was also not arbitrarily applied.

---

[4] The court would be remiss if it did not express its strong reservations about the community service component of the sentence at issue. It represents a significant encumbrance not only on the petitioner, but also on the parole officers who will be responsible for petitioner's placement and supervision. See, e.g., U.S. Sentencing Guidelines Manual § 5F1.3 application n.1 (explaining that "[c]ommunity service generally should not be imposed in excess of 400 hours" because "[l]onger terms of community service impose heavy administrative burdens relating to the selection of suitable placements and the monitoring of attendance"). Indeed, in light of his criminal history, petitioner poses special supervision problems in a community service setting. See 42 Pa. Cons. Stat. § 9754(b) (requiring that the sentencing court attach "reasonable conditions . . . necessary to insure or assist the defendant in leading a law-abiding life"). The court is troubled by this supervision burden, and its attendant costs. (See Doc. 8, Ex. E at 18 ("If [petitioner] works 20 hours per week, he will complete the community service requirement in 8.72 years.")). Nevertheless, as noted by the superior court, "this part of [petitioner's] sentence is not illegal and was no doubt intended to keep him busy and to compensate the community for the hours and days of investigative work his convictions required." (Id.) In this fashion, the superior court concluded that the community service conditions were rationally related to the sentencing goals of Pennsylvania's guidelines regime. It is not the role of a federal habeas court to second-guess a state court's lawful application of state criminal law. Were petitioner sentenced in the first instance before this court, his debt of community service may well be less lengthy; because he was not, the court's conception of an appropriate community service component is of no moment.

The sentencing court examined petitioner's history of recidivism and ordered this condition in order to adequately protect the public. (See Doc. 8, Ex. B at 81-82.) Furthermore, the superior court noted that similar conditions apply to Megan's Law offenders who are evaluated for risk of re-offense prior to their release from prison. (See Doc. 8, Ex. E at 18.) Petitioner's conditions of parole were specifically tailored to petitioner's personal history and characteristics. Thus, application of these conditions was constitutionally reasonable.

In summary, the court finds that the law relied upon by the state court in reaching its decisions was in accordance with Supreme Court precedent. Furthermore, the state court rendered reasonable determinations of fact in light of the evidence presented in the state court proceedings. Accordingly, the court will adopt the recommendation of the magistrate judge and habeas relief will be denied with respect to the first two grounds of requested relief.

## B. <u>Third Ground for Relief</u>

In his third ground for relief, petitioner alleges that prior to pleading guilty, he was not informed of the applicable statutory maximum sentence or of the potential conditions of parole. (See Doc. 30 at 9.) Thus, petitioner argues that his guilty plea was not knowing or intelligent. (See id.) Additionally, petitioner claims that his counsel was ineffective for failing to object to these omissions during the guilty plea colloquy. (See id.) Each of these claims will be considered in turn.

1. **Guilty Plea**

The Fifth Amendment requires that waivers of constitutional rights must be made knowingly, intelligently, and voluntarily. See Brady v. United States, 397 U.S. 742, 748 (1970). Specifically, a defendant entering into a guilty plea must be informed of maximum sentences, mandatory fines, and mandatory minimum sentences. See Jamison v. Klem, 544 F.3d 266, 278 (3d Cir. 2008). In the case *sub judice*, before accepting his guilty plea, petitioner was informed of the sentencing range, the maximum sentence, and the potential that conditions may be imposed on subsequent grants of probation or parole. (See Doc. 15 at 12 (citing Doc. 8, Ex. N)).

The superior court reviewed petitioner's invalid plea colloquy claim under the following test:

> In order to ensure a voluntary, knowing, and intelligent plea, our Supreme Court has required the trial court to ask the following questions, at a minimum: (1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?; (2) Is there a factual basis for the plea?; (3) Does the defendant understand that he or she has the right to a trial by jury?; (4) Does the defendant understand that he or she is presumed innocent until found guilty?; (5) Is the defendant aware of the permissible ranges of sentences and/or fines for the offenses charged?; (6) Is the defendant aware that the judge is not bound by the terms of any such plea agreement tendered unless the judge accepts such agreement?

(Doc. 8, Ex. N at 8-9 (quoting Commonwealth v. Pollard, 832 A.2d 517, 522 (Pa. Super. 2003) (citing PA. R. CRIM. P. 590))). Pennsylvania's test correlates with Brady's

command that a valid guilty plea is one that is voluntary, knowing, and intelligent.[5]

Hence, the plea colloquy test applied by the state court is not contrary to clearly

established Supreme Court precedent.

Turning to the second step of the § 2254 analysis, an objective evaluation of the

state court's decision demonstrates that it was not an unreasonable determination of

facts in light of the evidence.  In the instant case, all six questions required under

Pennsylvania law were addressed in the plea colloquy and were answered by

petitioner.  (See Doc. 8, Ex. N at 9-10.)  Additionally, petitioner testified that he

entered into the guilty plea knowingly and voluntarily.  (Doc. 8, Ex. A at 32-34.)  The

state court concluded that petitioner was of sound mind and that his plea was a

knowing and voluntary plea.  (Doc. 8, Ex. N at 12.)  Based upon the facts of record, the

guilty plea was in accordance with Pennsylvania law, and thus with Brady.

Furthermore, the sentence was not an unreasonable application of Brady and its

progeny because petitioner was informed of the necessary requirements of a guilty

plea.  Specifically, the court explained to petitioner, and he confirmed his

understanding of, the standard sentencing range, potential maximum fines, the

maximum sentence, and the possibility that the court could impose parole conditions

which the court deemed reasonable.  (Doc. 8, Ex. A at 25-28.)  Although the state court

did not detail the specific conditions of petitioner's parole prior to the guilty plea,

---

[5]Although the superior court did not cite Brady directly, "[a] state court
decision is not contrary to . . . clearly established Federal law simply because the
[state] court did not cite [applicable Supreme Court precedent]."  Mitchell, 540 U.S.
at 16.

14

under the Constitution and <u>Brady</u>, a defendant need not be informed of such conditions in order for the guilty plea to be valid.  <u>See</u> <u>Jamison</u>, 544 F.3d at 278. Hence, petitioner's guilty plea was constitutional pursuant to <u>Brady</u> and its progeny and his claim that his plea was invalid is meritless.

### 2.  **Ineffective Assistance**

Petitioner also alleges that his counsel was ineffective by not challenging the validity of the guilty plea for the reasons set forth above.  Specifically, petitioner claims he was not informed of the potential statutory maximum and potential conditions of parole, and that it was incumbent upon his attorney to compel the government to provide such information.  (<u>See</u> Doc. 30 at 9.)  A claim for ineffective assistance of counsel is governed by the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To prevail on an ineffective assistance claim, a petitioner must show that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient representation was prejudicial to the petitioner.  <u>Id.</u> at 688.  In determining whether counsel has met the objective standard of reasonableness, courts must be highly deferential towards trial counsel's conduct. <u>See</u> <u>id.</u> at 686.  In addition, counsel cannot be deemed ineffective for failing to raise a meritless claim.  <u>See</u> <u>United States v. Saunders</u>, 165 F.3d 248, 253 (3d Cir. 1999).  To satisfy the prejudice prong, a petitioner must show a reasonable probability that, but for the errors of his or her counsel, the outcome of the proceeding would have been different.  <u>Strickland</u>, 466 U.S. at 694.

In the action *sub judice*, the superior court reviewed petitioner's ineffective assistance of counsel claim under the following test:

> In order for Appellant to prevail on a claim of ineffective assistance of counsel, he must . . . demonstrate: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

(Doc. 8, Ex. N at 8 (quoting Commonwealth v. Johnson, 868 A.2d 1278, 1281 (Pa. Super. 2005))). The superior court did not cite Strickland, but the Third Circuit Court of Appeals has specifically held that Pennsylvania's ineffective assistance of counsel test is not contrary to Strickland. See Jacobs v. Horn, 395 F.3d 92, 106 n.9 (3d Cir. 2005) (citing Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000)) (holding Pennsylvania's three-prong test corresponds with Strickland's two-prong test). Hence, the ineffective assistance of counsel test applied by the superior court in this case was not contrary to clearly established Supreme Court precedent.

Furthermore, an objective evaluation of the superior court's decision shows that it was not unreasonable. As discussed supra, Part II.B.1, there were no defects to petitioner's guilty plea, and therefore any potential claim raised by petitioner's counsel would have been without merit. Because counsel cannot be ineffective for failure to raise a meritless claim, petitioner's counsel is not ineffective for failing to challenge the constitutionality of the guilty plea. See Saunders, 165 F.3d at 253. Petitioner makes no other claims against the effectiveness of his counsel and even testified that he was satisfied with his counsel's performance. (See Doc. 8, Ex. A at 36.)

16

Under these circumstances, counsel for petitioner was not constitutionally ineffective.

In summary, the court finds that the state court correctly applied the standards established in <u>Brady</u> and <u>Strickland</u> and reasonably determined that petitioner's guilty plea was constitutional and that his counsel was not ineffective. Accordingly, the court will adopt the recommendation of the magistrate judge and habeas relief will be denied on this ground.

**C.** **Fourth Ground for Relief**

In his fourth ground, petitioner asserts that he is actually innocent of two of the counts to which he pled guilty. The fourth ground was not raised until after the report and recommendation was issued by the magistrate judge. Thus, as a threshold matter, the court must determine whether petitioner exhausted this claim in the state courts. AEDPA mandates that a prisoner in state court may request federal habeas relief only if "the applicant has exhausted the remedies available in the courts of the state; or there is an absence of available state corrective process." § 2254(b)(1). Each claim in a habeas petition must have been "fairly presented" to the state courts, which "requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts." <u>Evans v. Court of Common Pleas</u>, 959 F.2d 1227, 1230 (3d Cir. 1992). Federal courts are to dismiss without prejudice "claims that have not been properly presented to the state courts, allowing petitioners to exhaust their claims" in the appropriate state tribunal. <u>Lines v. Larkins</u>, 208 F.3d 153, 159-60 (3d Cir. 2000).

For claims that were not fairly presented to the state court, but for which "further state-court review is clearly foreclosed under state law, exhaustion is excused on the ground of futility." Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines, 208 F.3d at 160. Although futile claims are deemed exhausted for federal habeas purposes, such claims are also procedurally defaulted; federal courts are not permitted to evaluate the merits of procedurally defaulted claims unless the petitioner "establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); see also Coleman v. Thompson, 501 U.S. 722, 750-51 (1991). To demonstrate "cause" for a procedural default, the petitioner must show that "'some objective factor external to the defense . . . impeded [his or her] efforts to comply with the [state] procedural rule.'" Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007) (quoting Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir. 2004)); Murray v. Carrier, 477 U.S. 478, 488 (1986). The petitioner may demonstrate prejudice by establishing the existence of errors that "worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions." Murray, 477 U.S. at 494. Finally, a federal court may excuse procedural default when its failure to review the claim will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger, 266 F.3d at 224. Actual innocence is one example of a miscarriage of justice. See Doctor v. Walters, 96 F.3d 675, 682 (3d Cir. 1996); see also Leyva, 504 F.3d at 366 (explaining that proof of a fundamental miscarriage of justice typically requires "actual innocence").

Petitioner's actual innocence claim was first raised on June 5, 2009 as an amendment to the instant habeas petition, (see Doc. 30); thus, this claim was not fairly presented to the state courts. However, this court may review petitioner's claim if it would be futile to bring the action in state court and there is either "cause or prejudice" or a "fundamental miscarriage of justice" to excuse the default. See Lines, 208 F.3d at 160.

Presentation of petitioner's actual innocence claim to the state courts would be futile. The PCRA imposes a strict one-year statute of limitations period from the date that a final judgment is imposed on any PCRA claim. See PA. CONS. STAT. § 9545(b)(1); Commonwealth v. Banks, 726 A.2d 374, 375-76 (Pa. 1999). Petitioner's PCRA petition was denied allowance of appeal by the Pennsylvania Supreme Court on July 18, 2007, triggering the one-year limitations period. (See Doc. 8, Ex. O.) That period has long since expired, thereby precluding petitioner from asserting his actual innocence before the state courts. Consequently, this claim is futile and this court will consider it exhausted. Nonetheless, petitioner's failure to litigate his actual innocence claim in the state courts amounts to procedural default. However, petitioner's assertion of actual innocence constitutes a claim alleging a fundamental miscarriage of justice. See Doctor, 96 F.3d at 682. Such allegations are sufficient to excuse the procedural default, allowing the court to review this ground for relief on the merits.

Actual innocence claims rely on new evidence discovered after conviction. In order to establish actual innocence, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new

evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995). To adjudicate an actual innocence claim, the court may look to "any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy." Bousley v. United States, 523 U.S. 614, 624 (1998). Therefore, petitioner must establish his actual innocence not only of the counts to which he pled guilty, but also any more serious charges that the government excused in the plea bargaining process. See id.

Petitioner's "new evidence" consists of several criminal informations that served as charging documents in his criminal case. (See Doc. 30 at 10.) Petitioner alleges that the seventh and eighth counts contained in the informations described the victim of the offense as "Heather Uhler." (See Doc. 33 at 2.) However, when petitioner orally pled guilty to each count at his plea colloquy, the victim identified in the seventh and eighth counts was "Debra Johnson." (See Doc. 8, Ex. A at 79.) Petitioner concedes that he was charged with crimes against Debra Johnson, but asserts that the charges were limited to stalking and criminal use of a communication facility.[6] (See Doc. 33, Ex. A at 2.) Petitioner argues that he is actually innocent of the distinct and materially different crimes of harassment by communication and stalking by communication.[7] (See id. at 3-4.)

_____

[6] These charges appear at counts nine and ten of the criminal informations. (See Doc. 33, Ex. A at 1-2.)

[7] The crimes of stalking and criminal use of a communication facility are more serious under Pennsylvania law than stalking by communication and harassment by communication. See 18 PA. CONS. STAT. §§ 2709(c), 7512.

Petitioner is not actually innocent of harassing and stalking Debra Johnson by communication because he has failed to establish that no reasonable jury would find him guilty of these offenses. Furthermore, petitioner fails to establish that he is innocent of more serious offenses foregone by the government during plea negotiations. In fact, petitioner admits that

> "[He] called [Debra Johnson] on her CB radio, talked to her about a funeral she had attended for her uncle. [He] described her clothes at the funeral and talked about her passing out. [He] then called her at her job a short time later and continued the conversation. [He] called her residence that evening and was upset with her daughter and her opinion about truck drivers."

(Doc. 8, Ex. A at 79; Doc. 33 at 3-4; Doc. 33, Ex. A at 1-2.) An individual is guilty of harassment by communication if the individual "(1) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures; or (2) communicates repeatedly in an anonymous manner; (3) communicates repeatedly at extremely inconvenient hours; or (4) communicates repeatedly in a manner not covered by paragraph (2) or (3)." 18 PA. CONS. STAT. § 5504(a) (current version at 18 PA. CONS. STAT. § 2709(a)(4)-(7)).[8] An individual is guilty of stalking by communication if the individual "engages in a course of conduct or repeatedly communicates to another under circumstances which demonstrate or communicate . . . [a]n intent to place such other person in

---

[8]After petitioner committed these offenses, § 5504 was repealed and the crimes contained in § 5504 were renumbered.

reasonable fear of bodily injury. " § 5504(a.1)(1) (current version at

18 Pa. Cons. Stat. § 2709.1(a)(2)).

Based on petitioner's admissions, this court cannot conclude that no

reasonable jury would find him guilty of harassing and stalking Debra Johnson by

communication—crimes to which petitioner orally pled guilty.  Indeed, the "new

evidence" presented is of no moment.  Petitioner, who was not acquainted with Ms.

Johnson, repeatedly called her after her uncle's funeral and communicated to her

that he had watched her at the funeral and described what she had been wearing.

He also told Ms. Johnson that he was upset with her daughter.  A jury could

reasonably conclude that this conduct satisfies the statutory requirements of

stalking by harassment, and also constitutes conduct that would place Ms. Johnson

in fear of bodily injury.  Accordingly, petitioner has failed to establish his actual

innocence of the offenses in the seventh and eighth counts and habeas relief will be

denied.

### III. **Conclusion**

For the foregoing reasons, the petition for writ of habeas corpus will be denied. The court will adopt the report and recommendation of the magistrate judge with respect to the first three grounds requested for relief. Petitioner's fourth ground for relief—that he is actually innocent—also lacks merit.

An appropriate order will issue.

   S/ Christopher C. Conner  
CHRISTOPHER C. CONNER  
United States District Judge

Dated:     August 3, 2009

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES BAENIG,** | : | **CIVIL ACTION NO. 1:07-CV-2148** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **GEORGE W. PATRICK and the** | : | |
| **PENNSYLVANIA ATTORNEY** | : | |
| **GENERAL** | : | |
| | : | |
| **Respondents** | : | |

## <u>ORDER</u>

AND NOW, this 3rd day of August, 2009, upon consideration of the amended petition for habeas corpus (Doc. 30) filed pursuant to 28 U.S.C. § 2254, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The magistrate judge's report and recommendation (Doc. 15) will be ADOPTED.

2. The amended petition for writ of habeas corpus (Doc. 30) is DENIED.

3. A certificate of appealability is DENIED. <u>See</u> 28 U.S.C. § 2253(c)(1).

4. The Clerk of Court is directed to CLOSE this case.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge